IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STUDIO ENTERPRISE LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 2:23-cv-02095 |
| v. | ) |
| | ) Judge Cathy Bissoon |
| SSB BANCORP, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM ORDER**

Pending before the Court are cross motions for summary judgment (Docs. 34 & 46).

The Court adopts the Proposed Findings of Fact supplied by the parties in which they stipulate, *inter alia,* to the following material facts: the terms of the Deposit Account Control Agreement ("DACA"), Studio SOF (Doc. 39) ¶¶ 20–30, SSB SOF Resp. (Doc. 42) ¶¶ 20–30; that SSB Bank signed it, Studio SOF ¶ 20, SSB SOF Resp. ¶ 20; and that SSB Bank made line of credit withdrawals from Account CK-000194310303 ("LOC Draws"), Studio SOF ¶¶ 44–45, SSB SOF Resp. ¶¶ 44–45; despite Studio's instruction not to do so, Studio SOF ¶¶ 41–45, SSB SOF Resp. ¶¶ 41–45.  The parties dispute the legal impact of the September Foreclosure.[1]

With respect to Studio's breach of contract claim, SSB contends that the LOC withdrawals were lawful because the September Foreclosure discharged Studio's secured status and the DACA.  *See generally* SSB Resp. & Supp. Mem. (Docs. 37 & 43), SSB Mot. Summary J. & Supp. Mem. (Docs. 46 & 47) (relying on 13 Pa. C.S.A. 9617 and 9622).  Studio disagrees,

---

[1] In partial satisfaction of the Debtors' obligations to Studio, Studio foreclosed upon and retained Debtors' Accounts maintained at SSB, plus all cash and other monies and funds in the Accounts as of, and received after, September 25, 2023, Studio SOF ¶ 34; SSB SOF Resp. ¶ 34, which was executed on September 26, 2023, Studio SOF ¶ 36, SSB SOF Resp. ¶ 36.  Studio also sent a Notice of Exclusive Control (the "DACA Notice") to SSB Bank, notifying SSB of Studio's foreclosure of its lien, security interests against the September Collateral in accordance with the September Proposal, Loan Documents, DACA and all other documents and instruments evidencing Studio's loan, security interests, and foreclosure of the September Retained Collateral, including the Accounts.  Studio SOF ¶ 35; SSB SOF Resp. ¶ 35.

arguing, *inter alia*, that it continued to have a security interest in the Account after the September Foreclosure, *see* Studio's Opp. Mem. (Doc. 49) at p. 5, and that a statutory discharge does not relieve SSB from abiding by the material terms of the DACA, *id*. at 5–8 (citing 13 Pa. C.S.A. 1103, 9339 & 9601), making the LOC withdrawals material breaches of the DACA, *see* Studio Mot. Summary J. 9–11. The Court need not address Studio's secured status,[2] as law and logic establish that the DACA remains in effect because "foreclosure does not discharge a security interest *for the purpose of enforcing that interest*," Studio's Opp. Mem. 8, n.1 (emphasis in original) (citing Bayer CropScience v. Stearns Bank Nat'l Ass'n, 837 F.3d 911, 915 (8th Cir. 2016) (interpreting identical language of Texas's UCC version of Sections 9617 and 9601 and holding that a secured party has a "cumulative right to foreclose on its collateral as well as to enforce its security agreement as to the proceeds of its collateral")); Studio's Supp. Mem. (Doc. 40) (citing U.C.C. § 9-620, cmt. 10).

Here, the DACA's central purpose was to govern the parties' control over the Accounts following a default by the Debtors and create an enforcement mechanism (the DACA Notice) to perfect the parties' agreement, *see* Studio's Reply (Doc. 38) at p. 4. That very scenario occurred. *See* Studio SOF ¶¶ 30–38; SSB SOF Resp. ¶¶ 30–38; U.C.C. § 9-620, cmt. 10. Additionally, SSB's statutory discharge argument ignores the provisions of Pennsylvania's Uniform

---

[2] However, if the Court were to consider Plaintiff's secured status, the undersigned finds Studio's arguments on the matter persuasive. *See generally* Studio Supp. Mem. Not only does it appear that the DACA is a subordination agreement the terms of which survived the September Foreclosure, but as Plaintiff argues, Section 9620 addresses this scenario:

> If the collateral is accounts . . . then a secured party's acceptance of the collateral in satisfaction of secured obligations would constitute a sale to the secured party. That sale normally would give rise to a new security interest (the ownership interest) . . . . In the case of accounts . . . the new security interest would remain perfected by a filing that was effective to perfect the secured party's original security interest.

U.C.C. § 9-620, cmt. 10. Thus, at the very least, Studio retained an interest to perfect its original security interest in the Accounts.

Commercial Code that promote the expansion of commercial practice and permit enforcement agreements, like the DACA and its Notice. *See* Studio's Opp. Mem. 5–8 (citing 13 Pa. C.S.A. 1103, 9339 & 9601). The record indisputably establishes also that such intent and understanding were reflected in SSB's actions. *See* Studio SOF ¶¶ 42–43 (requesting Studio's permission to make the LOC Draws post-September Foreclosure); SSB SOF ¶¶ 42–43 (same). Thus, the LOC Draws were material breaches of the DACA, and Studio is entitled to summary judgment as to its breach of contract claim (Count V) against SSB Bank only.[3]

Studio attempts to have its cake and eat it too by moving for summary judgment on its conversion claims. Studio argues that its conversion claims somehow are independent of the DACA as SSB's duties are promulgated under tort and Pennsylvania law. *See* Studio Supp. Mem. 20–22. However, Studio's ownership in the Accounts is predicated on the DACA and, as such, Studio's conversion claims fall within the purview of the DACA. Thus, there is no separate tort claim, and SSB's summary judgment motion is granted. Studio's conversion claims against SSB Bank and SSB Bancorp, Inc. (Counts I & II) are barred by the gist of the action doctrine.

Unsurprisingly, the Court finds also that SSB Bancorp, Inc. is entitled to summary judgment on Counts I, II and V. Studio does not dispute that the actual parties to the DACA are

---

[3] SSB's argument regarding its subsequent deposits, *see* SSB Supp. Mem. 5, not only lacks any analysis but, as Studio argues, also ignores DACA's terms that Studio would retain "the amount of funds in the Deposit Accounts . . . along with any additional amounts subsequently transferred to such Deposit Accounts," *see* Studio Reply 4 (quoting DACA Sect. 4). Thus, SSB's subsequent deposits do not shield it from liability.

The Court declines to analyze Studio's setoff arguments as SSB neglects to do so. However, as Studio argues, the parties intended SSB to subordinate its right to setoff to Studio's security interests in the Accounts, as reflected in the DACA. *See* Studio Supp. Mem. 11–16; Studio SOF ¶ 26; SSB SOF Resp. ¶ 26. Additionally, as Studio points out, SSB's statutory discharge argument undercuts its contention that the LOC draws were legal, as such statutory discharge — at least under SSB's view — would likely have discharged subordinate interests, like the Pledge. *See* Studio Reply 9–10.

Studio and SSB Bank.  *See* Studio SOF Resp. (Doc. 50) ¶ 49.  It insists, however, that SSB Bancorp is liable for conversion given "Studio remains unaware of which Defendant took which actions resulting in conversion of Studio's funds."  Studio Opp. Mem. 15–16.  Be that as it may, there is no basis for a claim in either contract or tort against SSB Bancorp because (1) it is not a party to the contract, and (2) Studio's conversion claims are barred as outlined above.

For these reasons, the parties' Motions for Summary Judgment (**Docs. 34** & **46**) are **GRANTED IN PART** and **DENIED IN PART**.  The Court rules in favor of Studio Enterprise LLC, as to its breach of contract claim (Count V) against SSB Bank; but in favor of SSB Bancorp, Inc. as to said claim.  The Court grants summary judgment in favor of Defendants SSB Bank and SSB Bancorp, Inc., barring Studio's conversion claims (Counts I & II) based on the gist of the action doctrine.  The claims that remain are Studio's declaratory judgment claims (Counts III & IV).  Thus, the parties shall file a Joint Status Report as to these claims and the status of the case on or before January 21, 2025.

    IT IS SO ORDERED.

December 31, 2024                                                      s/Cathy Bissoon
                                                                               Cathy Bissoon
                                                                               United States District Judge

cc (via ECF email notification):

All Counsel of Record